(Decided 20th February, 1872.)

---

The Baltimore City Passenger Railway Company *vs.* Thomas Sewell, Jr., and Richard Sewell, Jr.

*Construction of Section 33 of Article 4 of the Constitution—Appeal—New Trial—Arrest of Judgment—Action against a Corporation for refusal to issue its Stock in lieu of Shares of an association out of which the corporation was formed—Transfer of shares—Dividends recoverable as part of the Damages for the refusal to transfer stock.*

The granting or refusing a new trial by the Supreme Bench of Baltimore city, under Art. 4, sec. 33 of the Constitution, is a matter resting in the sound discretion of the Court, and its action thereupon is not the subject-matter of review upon appeal or writ of error.

Baltimore City Passenger Railway Company vs. Sewell.

Where a cause of action is defectively stated in a declaration, such defect is cured by verdict, but where no cause of action is stated, such defect is fatal, and the Court will on motion arrest the judgment.

An action will lie against a corporation for wrongfully refusing to issue certificates of stock to a party entitled.

The assignees of certain street railway franchises entered into articles of association, in contemplation of incorporation, wherein it was provided *inter alia* that the beneficial interest in the properties, rights and franchises of the association should be divided into a fixed number of shares of a certain par value, transferable only on the books of the association. By the terms of the Act of incorporation, the associates became entitled to the stock of the company, so formed, in proportion to their respective interests in the association, to be ascertained at the time of acceptance of the charter. One of the associates assigned certain of his shares before the incorporation, and his assignees having brought suit against the corporation for its refusal to issue to them certificates of stock in lieu of their shares it was HELD:

1st. That the right of an associate or his assignee to sue for such refusal does not differ in principle from that of an ordinary assignee of stock.

2d. That the transfer from the assignor, although not made on the books of the association, passed his title and interest in the shares, to the assignees, and they became thereby entitled to the stock of the corporation.

3d. That the shares thus assigned were personal property, the title to which would pass by transfer and delivery.

4th. That the assignees could, in their own names, maintain an action for the refusal to deliver the stock.

5th. That where the declaration avers an assignment under seal, accompanied by a delivery of the certificates of stock, the Court will, on motion in arrest of judgment, presume that the assignment was made for a *bona fide* consideration, and that the jury so found.

*Semble* that such a declaration would be good even on demurrer.

6th. That a failure to ascertain the interest of the associate or his transferee at the time of the acceptance of the charter, could not affect the right of either to the stock of the company in lieu of their shares.

7th. That defences based on the ground of issual of stock to the assignor prior to notice and demand by his assignee, or of indebtedness of the assignor to the association, should have been made at the trial below.

Baltimore City Passenger Railway Company *vs.* Sewell.

In an action at law against a corporation for refusing to issue or transfer
    stock, the plaintiff may claim in the same suit the value of the stock,
    together with the dividends due thereon, and in such a case the measure
    of damages is the value of the stock at the time of the demand, together
    with the dividends accrued thereon at that time, with interest to the day
    of trial.

APPEAL from the Supreme Bench of Baltimore City.

This action was instituted in the Superior Court of Balti-
more city by the appellees against the appellant, to recover
damages for its refusal to issue to them certificates of its stock
in lieu of three certificates for certain shares of an unincorpo-
rated association out of which the appellant was formed, and
which certificates had been assigned to the appellees by a
member of the association prior to its becoming a body cor-
porate.

The declaration contained three counts, one upon each of
the certificates, and all in the same form. The first count is
as follows:

For that whereas heretofore, to wit, on the 11th day of
May, in the year 1860, certain Jonathan Brock, (and others,
naming them,) being the assignees of certain City Passenger
Railway franchises, acquired under an ordinance of the Mayor
and City Council of Baltimore, entitled "An Ordinance em-
powering William H. Travers, and others, to build and lay
down tracks for a Passenger Railway on Baltimore and other
streets," approved March 28th, 1859, and being also the
holders of certain estate and property, real and personal, in
the city of Baltimore, did by certain articles of agreement,
under seal, bearing date on the day and year aforesaid, and
duly executed, acknowledged and recorded to affect real estate
in said city of Baltimore, constitute themselves into an asso-
ciation, under the name of the Baltimore City Passenger
Railway Association, for the purpose of using and operating
the railway franchises, conferred by said ordinance, under the
provisions, terms and stipulations contained in said articles;
and did, thereby, among other things, provide that the bene-

ficial interest in the properties, rights and franchises of said association, should be divided into forty thousand equal parts or shares, of the par value, when paid up, of $50 per share; which parts or shares should be, and they were thereby declared to be personal estate, and transmissible as such to the personal representative of a deceased shareholder, and transferable only on the books of said association, in person or by attorney, as the by-laws of said association might provide; and did thereby apportion to the said Jonathan Brock, as representing fully his separate interest in said association, six thousand eight hundred and forty of said parts or shares, and did thereby prescribe the form of certificate, to be issued by said association, for a share or shares of said stock; which form of certificate was so framed as to make the certificates, which might be issued for a share or shares of said stock, transferable only in the manner and under the conditions and qualifications set forth in a certain deed, executed by William S. Taylor to Jonathan Brock and others, and which deed, the plaintiffs aver, bears date, &c.

And the plaintiffs further say, that in and by said deed, it is provided that said certificates shall be transferable only on the books of the association, in person or by attorney, as the by-laws of said association might provide. And that in and by said by-laws, it was provided that certificates of stock should be issued to the stockholders, and transfers made when required, said certificates to be signed by the president and treasurer, and authenticated by the seal of the company. And that in and by said articles of agreement, provision was made for procuring the passage, by the General Assembly of Maryland, of an Act incorporating the said association; upon the passage of which, and the acceptance thereof, by shareholders holding a majority of the shares, all the parties to said articles of agreement, were, by the terms thereof, to be bound by such acceptance, and to unite in all such acts and proceedings as might be necessary to the incorporation of said association, and its efficient action as such.

And thereupon, afterwards, to wit, on the 21st day of May, in the year 1860, the said Baltimore City Passenger Railway Association, under and by virtue of, and in conformity with, said articles of agreement, did issue and deliver to the said Jonathan Brock, a certificate in the form prescribed in said articles, sealed with the seal, and signed by the president and treasurer of said association, numbered 195, for twenty shares of the capital stock of said association, in which it was acknowledged, that upon each of said shares, the sum of $15.75 had been paid. And thereupon, afterwards, to wit, on the 20th day of August, in the year 1860, the said Jonathan Brock, by a certain assignment under his hand and seal, did authorize the plaintiff to transfer to any person or persons forty shares of said capital stock, and did then deliver the said certificate, and another like certificate for other twenty shares of said capital stock, numbered 196, with the said assignment attached thereto, to the plaintiffs. And afterwards, by a certain Act of the General Assembly of Maryland, passed on the 13th day of February, in the year 1862, entitled, "An Act to incorporate the Baltimore City Passenger Railway Company," certain Henry Tyson, and others, their associates, assignees of all the rights, powers and privileges conferred by the aforementioned ordinance of the Mayor and City Council of Baltimore, were incorporated by the name and style of the Baltimore City Passenger Railway Company, for the purposes and with the powers and subject to the restrictions and limitations set forth in said Act; and it was by said Act declared, that upon the acceptance thereof by the said persons last named and others, their associates, all the property of every description acquired and held by them, for the purposes mentioned in, and to carry out the provisions of the aforesaid ordinance, should become vested in said corporation. And it was also thereby enacted, that the capital stock of said corporation should consist of forty thousand shares of the par value of $25 per share, to be distributed among the said persons last named and others,

their associates, in proportion to their respective interests in and under the said ordinance, to be by them ascertained at the time of their acceptance of said Act, and that the property of the persons last named and others, their associates, by said Act vested in said corporation, should be estimated as of the value, and taken and accepted by the said corporation as a payment of $15.75 per share on the capital stock of said corporation, and that the said corporation should have power from time to time to call in such further instalments on said capital stock, but none other, as should be found necessary to carry into effect the purposes of said Act—the said instalments to be paid by the holders of the said capital stock at the time and times at which such calls should be actually made; provided such further instalments, with the payment of $15.75, to be made by the transfer of the property of the said persons last named and others, their associates, as aforesaid, should not exceed, in the whole, the sum of $25 per share. And it was thereby also further enacted, that the said Act should go into operation immediately after the passage thereof, and after the said persons last named and others, their associates, or their attorneys or agents, should declare their acceptance thereof, by writing under their hands, or the hands of their attorneys or agents, to be executed in duplicate, and should file one of said duplicates with the clerk of the Superior Court of Baltimore city, for enrolment among the Land Records of said city, and deliver the other to the register of the city of Baltimore.

And the plaintiffs further say, that the said Act of Assembly was afterwards duly accepted, as required thereby, and all the prerequisites to making the same operative, and constituting the said Baltimore City Passenger Railway Company, which is the defendant in this action, a body corporate clothed with the powers, rights and liabilities contemplated by said Act, were duly complied with, and by reason thereof, all the franchises, property and interests represented by the shares of stock, for which certificates had been issued by the Baltimore

City Passenger Railway Association, became and were vested in the defendant. And that subsequent to its incorporation, as aforesaid, and prior to the 11th day of October, in the year 1862, the defendant, as authorized by said Act of incorporation, did call in a further instalment of $1 per share upon its capital stock, and did, subsequent to such call, to wit, on the day last named, receive from the plaintiffs in respect of the twenty shares of said capital stock, to which they were entitled by reason of the assignment to them, as aforesaid, of the said certificate No. 195, for twenty shares of the capital stock of the Baltimore City Passenger Railway Association, and the transfer to the plaintiffs, as hereinbefore stated, of the property and franchises represented by said twenty shares of stock, the said sum of $1 per share, and did by its treasurer, endorse a receipt for the same upon said certificate, thereby recognizing the plaintiffs as the rightful holders or owners of twenty shares of the capital stock of the defendant. And the plaintiffs thereupon, afterwards, to wit, upon the 24th day of June, in the year 1867, and on divers days thereafter, and before the bringing of this suit, being, at said times, the holders of the certificate aforesaid, did apply to and require the defendant to issue to them in lieu of said certificate, which they then offered to surrender, a certificate for an equal number of shares of the capital stock of the defendant, in accordance with the formalities required by its charter, which they then offered and expressed their willingness in all things to observe, and did also then require the defendant to pay to them all dividends declared by it upon said shares of stock; but the defendant not regarding its duty and liability in the premises, did wholly refuse, at the respective times of such application and requirement, and still doth refuse to issue and deliver to the plaintiffs a certificate for the said twenty shares of its capital stock, or to pay to them the dividends declared thereon.

The verdict being for the appellees, the appellant filed motions for a new trial and in arrest of judgment, which,

under the then existing law, (February, 1870,) were heard by the Supreme Bench of Baltimore city, and overruled. The appeal was taken from this order.

The cause was argued before BARTOL, C. J., STEWART, BRENT, BOWIE, ALVEY and ROBINSON, J.

*Arthur W. Machen* and *S. Teackle Wallis,* for the appellant.

[The argument on the motion for a new trial is omitted, as this Court held that the refusing a new trial by the Supreme Bench was a matter resting in the sound discretion of the Court, and was not the subject of review on appeal.—REP.]

Upon the motion in arrest of judgment, it was argued that upon the face of the pleadings, the plaintiffs had no right of action.

There are precedents for an action by an assignee of shares, against a corporation which has wrongfully refused to make the assignment effectual by a transfer on the books. But here the stock, of which a transfer is demanded, *did not exist* before May, 1862, when the Company became incorporated; while the alleged acts of assignment all took place *one year, or two years, previously.*

How can a corporation be required to regard as an assignment of shares in its capital stock, an instrument which does not even purport to speak of such stock? In 1867, a writing is produced by a third party, dated long before the corporation was in existence, purporting to have reference only to shares or interests in an unincorporated company or partnership, and silent as to any shares in the stock of the Baltimore City Passenger Railway Company. If that power of attorney indicated an assignment of the property from Brock to Sewell, why did not the latter appear and claim his place as one of the associates, at the time of the acceptance of the charter, and incorporation under it? If it was to avail at all, it was to avail during the period of the association. When

that time is allowed to go by, and no use made of the power, does not the presumption arise that all legal rights under it have been waived? Had the company made the transfer to Sewell, and Brock the next day appeared and claimed the right to transfer his stock to some one else, what sufficient answer could the company have given?

If it be contended on behalf of the plaintiffs that they are not claiming in the character of assignees from Brock of any shares of his in the stock of the company, but found their right to recover upon the fact that whilst he was a member of the association he completely assigned his interest to them, so that they themselves, and not he, became shareholders in the company upon its organization, the declaration furnishes a conclusive answer to the position. The articles of association, and deed of trust referred to in them, (as stated in the declaration,) provided, that the certificates of shares in the association should be "*transferable only on the books of the association.*" The declaration discloses that the certificates in question were not so transferred. It is not even averred that any attempt was made to effect such transfer. The powers of attorney were never presented, nor any use made of them, during the existence of the association. Thus, by the showing of the plaintiffs themselves, the condition on which their right to establish an interest in the association depended was not fulfilled. *Walkers' Case, Law Rep.,* 2 *Eq.,* 556; *Fisher vs. Essex Bank,* 5 *Gray,* 378–83; *Blanchard vs. Dedham Gas Light Co.,* 12 *Gray,* 215; *Northrop vs. Newtown and Bridgeport Turnpike Co.,* 3 *Conn.,* 544; *Walworth, C., Commercial Bank of Buffalo vs. Kortright,* 22 *Wendell,* 352, 353; *Union Bank vs. Laird,* 2 *Wheat.,* 390; *Williams vs. Mechanics' Bank,* 5 *Blatchf.,* 59.

The last recorded stockholder is the only recognized and legal owner of the shares. *Shaw vs. Spencer,* 100 *Mass.,* 388.

At no time before the 24th of June, 1867, could the *company,* it is clear, have insisted on regarding Sewell, and not Brock, as the legal holder of the shares. The relation could

not exist without mutuality. *East of England Banking Co., ex parte Bugg,* 2 *Drewry & Smale,* 452.

Even between the parties—Brock and the plaintiffs—the transaction did not amount to an assignment. As the declaration discloses, there was no writing, except a mere power of attorney. And it does not even appear that the power was coupled with an interest; for it is not averred that any consideration passed between Brock and the plaintiffs. The right of the latter is rested merely on the possession of a certificate issued to Brock by the association, and a power of attorney which it is not pretended was ever put in exercise. *McNeil vs. Tenth National Bank,* 55 *Barb.,* 59, 65; *Boyd vs. Rockport Steam Cotton Mills,* 7 *Gray,* 408.

The act of incorporation, as set forth in the declaration, required that the capital stock of the new company should be divided amongst the associates " in proportion to their respective interests in and under said ordinance, *to be by them ascertained at the time of their acceptance of said act.*" It is, therefore, indispensable, that any one claiming a transfer of shares in the company, should show, either that he (or his assignor,) was the actual holder, upon the books of the company, of the shares in question, or that he, or his assignor, had such an interest by an *ascertainment* so made by all the associates, at the time of the acceptance of the charter, in the property of the original partnership, or association, as *entitled* him, by virtue of the charter, to the specific shares demanded.

The declaration discloses a further and independent ground for arresting the judgment. In all the counts the claim of damages embraces not only compensation for the stock, but the *dividends* declared upon it. But it is clear that the dividends are no part of the damages consequent upon the defendant's refusal of the plaintiffs' demand. That the subsequent dividends cannot be recovered along with the value of the stock itself is too plain for discussion. It is perfectly clear also that the loss of dividends which had accrued before a transfer of the shares was demanded can form no part of the

plaintiffs' damages.   Those dividends were payable to Brock, were liable to be applied by the company to the payment of his debts to the company, and were subject to be attached by his creditors.   *Gray vs. Portland Bank,* 3 *Mass.,* 382, 386; *Bates vs. N. Y. Insurance Co.,* 3 *Johns. Cas.,* 238; *Union Bank vs. Laird,* 2 *Wheat.,* 390; *Fisher vs. Essex Bank,* 5 *Gray,* 377, 378; *Shaw vs. Spencer,* 100 *Mass.,* 388; *Coleman vs. Spencer,* 5 *Blackf.* (*Ind.*) 197; *Williams vs. Mechanics' Bank,* 5 *Blatchf.,* 59.

Where a declaration claims, in addition to legitimate damages, other damages which are not proper to be recovered, and the jury assess damages generally, *the judgment must be arrested.*   *Stirling vs. Garritee,* 18 *Md.,* 468; *Hambleton vs. Veere,* 2 *Wms. Saund.,* 169, 171; *Harbin vs. Grene, Moore,* 887, *and other cases cited in note* 1; *Sicklemore vs. Thistleton,* 6 *M. & Sel.,* 9, 12; *Parke B., Sheen vs. Rickie,* 5 *M. & W.,* 181.

*Daniel M. Thomas* and *Wm. Pinkney Whyte,* for the appellees.

The first reason assigned in support of the motion in arrest of judgment, namely: that the declaration sets forth no cause of action whereupon the plaintiffs can recover against the defendant, cannot be maintained.   If (which is denied) any fact or facts be imperfectly stated or omitted in the declaration, the issues joined were "such as necessarily required on the trial, proof of the facts so imperfectly stated or omitted," and therefore, any such supposed "imperfection or omission will be cured by the verdict."   *Code, Art.* 75, *sec.* 9; *Merrick vs. Trustees of Bank of Metropolis,* 8 *Gill,* 75, 76; *Coulter vs. Trustees of West. Theol. Seminary,* 29 *Md.,* 75.

But this declaration does in fact contain everything "necessary to constitute a ground of action" in the plaintiffs, and this is all that is required by the Code.   *Art.* 75, *secs.* 2, 3.

The facts stated in the *nar.* show the right of the plaintiffs to demand the issual to them by the defendant of certificates

for certain shares of its stock, and the refusal of the defendant so to do, and for such refusal the present action is maintainable. *The King vs. The Bank of England, Douglas,* 526; *Kortright vs. Buffalo Com. Bank,* 20 *Wend.,* 91; *Shipley vs. Mechanics' Bank,* 10 *Johns.,* 484; *Ex parte Firemens' Ins. Co.,* 6 *Hill,* 243; *Sargent vs. Franklin Ins. Co.,* 8 *Pick.,* 98; *Building Association vs. Sendmeyer,* 50 *Penn.,* 67–75; see also *The Schuyler Case,* 34 *N. Y.,* 80 *et seq.*

The owner of shares of stock in a company, and entitled to a certificate therefor, may bring *assumpsit* against the company for its refusal to deliver to him such certificate. *Wyman vs. Am. Powder Co.,* 8 *Cush.,* 168, 180; *Hussey vs. Bank of Nantucket,* 10 *Pick.,* 423.

And his having no certificate of ownership will not prejudice his claim, as it was not in his power to get one without the assent of the company. *Ellis vs. Proprietors of Essex Merrimack Bridge,* 2 *Pick.,* 243.

ROBINSON, J., delivered the opinion of the Court.

This is an action to recover damages for the refusal on the part of the appellant, to issue and deliver to the appellees certain certificates of its capital stock, to which they claim to be entitled, as set forth in the declaration.

The plaintiffs obtained a verdict below, and the defendant filed motions for a new trial and in arrest of judgment, both of which were overruled by the Supreme Bench of Baltimore city, and this appeal is taken from the order overruling said motions.

## I.—*The motion for a New Trial.*

In *Sauer vs. Schulenberg,* 33 *Md.,* 288, and *Merrick vs. Balt. & Ohio R. R. Co.,* 33 *Md.,* 481, it was held, that the granting or refusing a new trial by the Supreme Bench under section 33 of Article 4, of the Constitution, was a matter resting in the sound discretion of the Court, and its action thereupon was not the subject-matter of review upon ap-

peal or writ of error. We find nothing in the case before us to exempt it from the operation of this well established rule.

## II.—*The motion in Arrest of Judgment.*

The question on this motion is, whether the facts averred in the declaration and found to be true by the jury, constitute a *sufficient cause of action* to entitle the plaintiffs to a judgment. If the cause of action be *defectively stated*, such defect is cured by the verdict, because to entitle the plaintiff to recover, "all the circumstances necessary in form or substance to complete the title so imperfectly stated, must be proved at the trial, and it is therefore a fair presumption that they were proved." *Gould on Pleadings,* 497; *Coulter vs. Trustees of West. Theol. Sem.,* 29 *Md.,* 74. Where however, *no cause of action is stated,* such a defect is fatal, and the Court will on motion arrest the judgment.

It is contended, that the cause of action set forth in the pleadings, is defective, because although precedents may be found for an action by an assignee of shares against a corporation for wrongfully refusing to perfect an assignment or transfer of the same on its books, yet in this case the stock, of which a transfer is demanded, did not exist prior to May, 1862, when the company became incorporated, while the alleged acts of assignment all took place one or two years previously. We start then, with the *concessum,* that an action will lie against a corporation for wrongfully refusing to issue certificates of stock to a party entitled. Let us see then, how far the case before us differs in principle from the one thus admitted. The appellees, it is true, do not sue as subscribers, nor in the character of assignees of stock of the appellant, but found their right to recover upon the fact, that Brock, whilst a member of the association, assigned to them certain shares of the latter, whereby they claim to be entitled upon its incorporation, to a given number of shares of the company.

The declaration avers that Brock and others, being assignees of certain City Passenger Railway franchises acquired under an ordinance of the Mayor and City Council of Baltimore, constituted themselves into an *association* for the purpose of using and operating said railway franchises, and did by articles of association, provide, among other things, that the beneficial interest in the properties, rights and franchises of the association should be divided into forty thousand equal shares of the par value of $50 per share; that these shares were *transferable on the books of the association;* that provision was made for its incorporation; that in pursuance thereof it became duly incorporated, whereby all the property and rights and franchises of the association became vested in the new company; and that by the express terms of the Act of incorporation, the associates became entitled to the stock of the appellant, in proportion to their respective interests in the association. Under these averments, the right of the associates to stock of the company in lieu of their shares in the association, is beyond all question, and we think it is equally clear that, upon a refusal to issue the same, an action at law would lie. If so, why should a *bona fide* assignee stand upon a different footing? If the association, upon demand and presentation of his muniments of title, had refused to transfer the same upon its books, a Court of Equity would have enforced it, and if the association had in the meantime become incorporated, capable of suing and being sued at law, there is no reason why the assignee should be obliged to seek relief in equity. The right then, of an associate or his assignee to sue the appellant for its refusal to issue certificates of stock to which he is entitled, does not differ in principle from that of an ordinary assignee of stock. If any equities existed at the time of the assignment, or have intervened subsequent thereto, and prior to the demand of the assignee, affecting the interest of the assignor in the shares thus assigned—if the latter was indebted to the association, and such indebtedness was under the articles of the associa-

tion or by-laws, a lien on the shares of the assignor, these and other like defences could be relied on in an action at law as well as in a suit in equity.

But it was insisted, that if the appellees claim as assignees of shares of the association, the declaration upon its face shows that the transfer was not made on its books in pursuance of the articles and by-laws of the association. The legal effect of a provision in the charter or by-laws of a corporation, requiring a transfer of its stock to be made on its books, has often been the subject matter of controversy, and although a *literal construction* has been given in Connecticut to such clauses, yet in other States, and in the Supreme Court of the United States, a more liberal construction, and one far more in accordance with their spirit and meaning, has been adopted. In regard to such provisions, says *Angell & Ames on Corporations, sec.* 354 : " As they are intended merely for the protection of the interests of the corporation, no effect is given to them further than is necessary to effect that purpose. It is necessary that an incorporated company should have the means of knowing who are stockholders and members, in order that they may know to whom dividends are to be paid, and who are entitled to vote upon the stock ; and where the company has a lien upon the stock for debts due to it from a stockholder, that it should have the means of preventing a transfer in derogation of its own rights. To secure this knowledge, and to enable corporations to avail themselves of their lien upon the stock of the company without danger to the rights of purchasers, these clauses are usually inserted in their charters, or form a part of their by-laws. Accordingly, where transfers of stock are made without conforming to the requisitions of the charter or by-laws in making them, or having them registered on the books of the company, the better opinion decidedly is, that the transfer passes to the purchaser all the right that the seller had ; and that such provisions do not incapacitate the owner of the stock from transferring it at his pleasure, by way of equitable assignment of his interest in

it, subject to the charter rights of the corporation. In other words, such provisions, whether by charter or by law, apply solely to the relation between the corporation and its stockholders—to the questions, who shall vote, to whom dividends shall be paid; and enable the corporation to protect any lien it may have upon the stock, or equity in it, as between itself and the stockholder transferring it." And in considering this question, *Redfield on the Law of Railways, vol.* 1, 113, says, " the assignee need only make his right known to the company, and require the transfer to be entered upon the books, and his title becomes perfected." In accordance with these views, it has been repeatedly decided that an assignee may sue a corporation for refusing to issue or transfer certificates of stock, although the assignment was not made on its books, in pursuance of the charter and by-laws. *Bank of Utica vs. Smalley,* 2 *Cow.,* 770; *Sargent vs. Franklin Ins. Co.,* 8 *Pick.,* 90; *Mechanics' Bank vs. N. Y. and N. H. R. R. Co.,* 13 *N. Y.,* 624; *N. Y. and N. H. R. R. Co. vs. Schuyler,* 34 *N. Y.,* 80; *Gilbert vs. Manchester Iron Manufacturing Co.,* 11 *Wend.,* 628; *Kortright vs. Buf. Com. Bk.,* 20 *Wend.,* 91. In the cases relied on by the appellant, the question was whether such an assignment would pass title against a *creditor of the assignor* who had attached the stock in the hands of the company prior to a transfer on its books; or against a *subsequent purchaser* without notice; or against the lien of the company on the stock for an indebtedness of the stockholder. *Fisher vs. Essex Bk.,* 5 *Gray,* 378; *Blanchard vs. Dedham Gas Light Co.,* 12 *Gray,* 215; *Union Bk. vs. Laird,* 2 *Wheat.,* 390; *Pinkerton vs. Manchester and Lawrence R. R.,* 42 *New Ham.,* 427.

If such is the effect of a provision of this kind in the charter or by-laws of a corporation, we see no reason why the same effect should not be given to such a provision in the articles or by-laws of the association, and more particularly as the association was formed and the articles adopted with a view of being *incorporated.* It is not to be presumed that such a provision was intended to better the right of transfer by

unreasonable and unnecessary restraints, but on the contrary, in providing that the shares should be transferable, to afford every facility for the sale and convertibility of the same, consistent with safety to the association.

If then, the transfer from Brock, although not made on the books of the association, passed his title and interest in the shares to the appellees, and in lieu thereof, they became entitled to the stock of the appellant, we think it is equally clear that upon a refusal to issue the same an action may be maintained in their names. The shares thus assigned may differ in some respects from an ordinary *chose in action*, and may be regarded as the muniments and evidence of the holder's title to a given number of shares in the property and franchises of the association, yet nevertheless, they are personal property, the title to which will pass by a transfer and delivery. If the transfer is not made on the books of the association, as required by the articles and by-laws, the transferee acquires at least an equitable title, which it was the duty of the association to recognize and permit to be ripened into a complete legal title, and, if prior to a demand it had become incorporated, it was equally the duty of the company. For a breach of this duty, a duty imposed by the very terms of its charter, we are of opinion that an action at law may be maintained in the name of the transferee.

But it is further contended, that it does not appear upon the face of the pleadings that the appellees are *bona fide* assignees. The declaration however avers an assignment under seal by Brock, accompanied by a delivery to the plaintiffs of the certificates of shares attached to said assignment, and further, that under a call subsequently made by the appellant, the appellees paid to its treasurer authorized to receive the same, one dollar per share on the capital stock to which they were entitled by reason of the assignment as aforesaid. These averments, however, it is said, are not inconsistent with a mere . *naked power*, not coupled with an *interest*, to which it may be replied they are equally consistent with an *interest*

under the *power*. Moreover, this objection is not made on demurrer, but on a motion in arrest of judgment, and on the ground that these averments do not constitute a sufficient cause of action to entitle the plaintiffs to a judgment upon a verdict, in support of which, every fair legal intendment is to be made. It may be true, that the appellees must be *bona fide* assignees to entitle them to recover, but where the declaration avers an assignment under seal, accompanied by a delivery of the certificates of stock, the Court will, on a motion in arrest of judgment, presume that the assignment was made for a *bona fide* consideration, and that the jury so found. We are not to be understood however, as intimating that the declaration would have been bad even on demurrer, because it does not aver an assignment for a valuable consideration. *Crawford vs. Brooke,* 4 *Gill,* 213; *McDowell vs. Goldsmith,* 6 *Md.,* 343.

But it is also contended, that the Act of incorporation, as set forth in the declaration, required the capital stock of the new company to be divided among the members in proportion to their respective interests in the association, to be by them ascertained at the time of the acceptance of the charter, and that a party claiming a transfer of shares of the company, should either show that he or his assignor was the actual holder of the stock upon the books of the company, or that he or his assignor had such an interest, by ascertainment made at the time of the acceptance of the Act of incorporation. We do not understand however, it is contended, that this ascertainment was a *condition precedent* to the *organization* of the company. On the contrary, it was admitted, and the declaration avers, that the charter was acccepted, and all the pre-requisites to making the same operative, and constituting the defendants a body corporate, were duly complied with. Can it then, be construed as a condition precedent to the right to sue the company for its refusal to issue to a member certificates of stock to which he claims to be entitled? Clearly not. The Act provided that an acceptance thereof by a ma-

jority of the members should be binding on all, and various causes might operate to prevent an ascertainment at the time of its acceptance. In fact, the very majority thus accepting might refuse to make the ascertainment at that time, and not being a condition precedent to the incorporation of the company, the latter would be entitled to all the property of the association, and according to the view of the appellants, the members would be obliged to seek relief in equity. And why in equity? The articles of association provided that the beneficial interest in the properties, rights and franchises thereof should be divided into a given number of shares, of a fixed and determinate value, and the Act of incorporation provided, that the associates should be entitled to the stock of the company in proportion to their interests in the association. There is no reason why this interest could not be ascertained, subsequent as well as prior to the acceptance of the charter. True, the ascertainment ought to have been made at the time of the acceptance of the charter, but the mere failure to do so could not in any manner affect the right of an associate or his transferee to the stock of the company to which they were entitled, under *its* charter, in lieu of their shares in the association. If, prior to notice and demand by the appellees, the company had ascertained the number of shares to which Brock was entitled as an associate, and had issued the same to him, or any one claiming under him, or if by reason of an indebtedness by him to the association, he was not entitled to the stock claimed by the appellees, these, and other like defences, could and ought to have been relied on at the trial below.

This brings us to the last reason urged in support of this motion, namely: that in all the counts of the declaration the claim of damages embraces, not only compensation for the stock, but the dividends accrued thereon. It does not occur to us as being very unreasonable, that in a suit against a corporation for refusing to issue certificates of stock to a party entitled to the same, he should, in addition to the value

of the stock, be allowed the dividends which had accrued thereon prior to the demand.   If he is entitled to the stock, he is also entitled to the dividends, and we know of no rule of pleading which forbids his claiming damages in the declaration for wrongfully withholding the same.   An action at law against a corporation for refusing to issue or transfer stock, is a convenient common law remedy to obtain compensation in damages, in lieu of a proceeding in equity for specific performance.   In *The King vs. The Bank of England, Doug.*, 523, Lord MANSFIELD refused a *mandamus* to compel the bank to enter a transfer of stock on its books, upon the ground that an action would lie at law for *complete satisfaction, equivalent to the specific remedy* by *mandamus.*   Now it is very clear, that in cases where equity has jurisdiction, Courts have not only decreed that the certificates of stock should issue or be transferred, but in addition, have decreed payment of the dividends which may have accrued.    In *Lowman Chew and Wm. Goldsborough vs. The Bank of Balt.*, 14 *Md.*, 299, this Court decreed, that the bank should make the transfer as prayed in the bill of the complainant, and also pay the dividends accrued thereon, with interest on the same. In an action at law, a party may not be able to enforce a specific performance, yet he ought to be entitled to complete satisfaction, equivalent to specific relief in equity, and if he can only recover the value of the stock at the time of the demand, with interest to the day of sale, it is very clear he gets no compensation for dividends which have accrued prior thereto, for the interest allowed is in lieu of dividends accruing subsequent to the demand.    A party would therefore be compelled to bring a suit for the value of his stock, and another suit to recover the dividends declared thereon.

In the cases cited by the appellant, the question was as to the measure of damages, in regard to the *stock itself*, whether the plaintiff was entitled to recover the value of the same at the *time of the demand,* or the value at the time when the same ought to have been *transferred;* or the value at the *time*

*of the trial*, or at any *intermediate period.* In such cases, the general rule is, that the plaintiff is entitled to recover the value of the stock at the time of the demand, with interest thereon. The question however as to the right to recover in addition thereto, the dividends which may have accrued prior to the demand, did not arise, and was not considered in any of these cases.

We see nothing, therefore, either on principle or upon authority, to prevent a party from claiming in the same suit, the value of the stock, together with the dividends due thereon; and in such a case, the measure of damages would be the value of the stock at the time of the demand, together with the dividends accrued thereon at that time, with interest to the day of trial. And such is the claim made in the plaintiff's declaration. It was said in argument, that damages were allowed by the jury to the day of trial, but they are assessed generally, and it is not for us to say, on a motion in arrest of judgment, that the jury have assessed other damages not claimed in the declaration.

*Order affirmed.*

(Decided 23d February, 1872.)