# THE JOHN C. GRAFFLIN COMPANY et al. *vs.* JAMES S. WOODSIDE, Assignee.

*Corporations—By-Laws—Lien on Shares of Stock for Indebtedness to Corporation—Proof of Indebtedness—Assignment for Benefit of Creditors—Minutes of Board of Directors.*

Code, Art. 23, sec. 55, enacts that corporations created under the general laws shall have power to make by-laws for the management of their property and for the transfer of stock. *Held,* that a by-law of a corporation providing that no stockholder owing to the corporation a matured debt shall transfer his stock until such debt be paid, is valid and enforceable against all transferees of stock, except innocent purchasers for value. And where a stockholder who is indebted to the company makes a general assignment for the benefit of creditors, such assignee, not being a *bona fide* holder for value, takes the same title the assignor had, and the shares of stock so transferred are subject to the lien of the corporation for the debt due by him.

When a stockholder accepts his shares with knowledge of the existence of a by-law of the corporation creating a lien on the shares of a member for debts due by him to the corporation, and such stockholder afterwards becomes indebted to the corporation, he must be held to have pledged his stock for the debt, and as between him and the corporation the pledge is as binding as if made in the most solemn form of hypothecation.

The minutes of a meeting of the board of directors of a corporation set forth that the chairman stated that F., a stockholder, had made a satisfactory settlement of the amount due by him to the company, and that entries would be made upon the books of the company. *Held,* that evidence is admissible to contradict or explain this statement, and to show that F.'s indebtedness had not been extinguished, but that the exact amount thereof had been agreed upon and entered on the books.

Appeal from a decree of the Circuit Court Number Two, of Baltimore City (Stockbridge, J.), by which the J. C. Grafflin Company was directed to issue to James S. Woodside, assignee of F. L. Grafflin, a certificate of stock for 362½ shares, then standing upon the stock book of the company in the name of F. L. Grafflin.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Oct. 20, 1897).

*J. Alexander Preston* and *Robert Ludlow Preston* (with whom was *Alex. Preston* on the brief), for the appellant.

*Fielder C. Slingluff,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Frederick L. Grafflin executed a deed of trust to James S. Woodside in December, eighteen hundred and ninety-four, for the benefit of his creditors. It is alleged that at the time of the execution of the deed of trust, the said Frederick was entitled to a certificate for three hundred and sixty-two and a-half shares of stock in the John C. Grafflin Company, a corporation; and that the said certificate is now in the possession of his wife, who refuses to surrender it; and that the corporation refuses to issue a new certificate to the assignee. A bill in equity was filed by Woodside alleging these facts, and praying that the old certificate might be surrendered and cancelled, and a new certificate issued to him by the corporation. The answer of the corporation alleges that before the execution of the deed of trust Frederick L. Grafflin was indebted and is still indebted to the corporation; and that Article ten (10) of the by-laws of the said John C. Grafflin Company adopted at the time of the organization of said company in the month of September, in the year 1889, is as follows: "Transfers of stock shall only be made by the stockholders in person or by duly constituted attorney on the transfer-book at the company's office upon surrender of the certificate for stock to be transferred; and no stockholder owing the company a matured debt shall transfer his or her stock, or receive any dividend thereupon, until such debt be paid, except by consent of the board of directors." The answer of Frederick Grafflin and wife claims the stock as the wife's property. After replication and testimony the cause was heard and a

decree was passed for the surrender of the old certificate, and the issue of a new one to Woodside and assignee. Appeal was prayed by the defendants.

It is shown beyond dispute that at the time of the execution of the deed of trust Frederick Grafflin owed the corporation more than forty-five thousand dollars. It is contended, however, by the complainant, that this indebtedness has been discharged since that time by the debtor, and it is supposed that this fact is proved by the proceedings of the board of directors at a meeting held July the fifteenth, eighteen hundred and ninety-six. The portion of the minutes relied on is in the following words : " The chairman stated that Mr. F. L. Grafflin has made a satisfactory settlement of the amounts due by him to the John C. Grafflin Co., and that the entries will be made upon the books of the company at once." It cannot be held that this statement of the chairman established the fact conclusively, so that no evidence would be competent to contradict or explain it. We will examine the facts which preceded and followed it, and endeavor to ascertain in what way the settlement was made. The John C. Grafflin Company was incorporated after the death of Mr. Grafflin for the purpose of carrying on his business. All the stock with a very small exception was divided among his children F. Dorsey Grafflin, Frederick L. Grafflin, and their two sisters, Miss Edith and Miss Emma. On the nineteenth day of June, eighteen hundred ninety-six, an agreement was made between F. Dorsey Grafflin, Frederick L. Grafflin, Miss Emma and Miss Edith Grafflin, in the following terms : " This agreement, made this 19th day of June, 1896, by Frank Dorsey Grafflin, Frederick L. Grafflin, Emma Clare Grafflin, and Edith Brice Grafflin, stockholders in the John C. Grafflin Company: Witnesseth, that whereas there have arisen differences between us as to the respective indebtedness and credits of said parties in and to said corporation, irrespective of their holdings of stock therein; and whereas an examination has been made of the books of said company; and whereas, it has been

agreed by and between the parties hereto, after an examination of the report of the expert, who has fully examined all the accounts of the said company, that the following amounts be and the same are hereby accepted by all of us as the proper and correct statement of the credits and indebtedness of the parties hereto, in and to said company, as of April 30th, 1896.

" Now, therefore, in consideration of the premises, we hereby agree that upon the books of said corporation the following entries shall be made, which shall be conclusive of all debts and credits of the parties hereto, up to and inclusive of thirtieth day of April, 1896.

" It is agreed that $49,523.04 is due said corporation by Frederick L. Grafflin, in addition to $3,569.96, stipend account with interest.

" It is agreed that said corporation owes to Frank Dorsey Grafflin the sum of $3,240.95.

" It is agreed that said corporation owes Emma Clare Grafflin the sum of $14,636.40.

" It is agreed that said corporation owes to the said Edith Brice Grafflin the sum of $16,226.98.

"And it is further agreed that the board of directors of said company shall pass a resolution ratifying this agreement." And it was signed and sealed by the parties thereto.

Alexander Dodd, an expert accountant, testified that he made an adjustment of the credits and indebtedness of the Grafflin family in their relations to the John C. Grafflin Company; that Frederick Grafflin claimed that he had not been allowed any salary during the time he had been president of the company; that his brother and sisters agreed that he should be allowed a credit of two thousand dollars during that time; that there were some errors in the accounts; items had been charged to him which he claimed ought to be charged to the estate; other items had been charged to Dorsey Grafflin which ought to have been charged to Frederick; that he (Dodd) examined the

accounts separately and adjusted the differences; and was called upon to make the entries on the books of the corporation after they had all agreed on the different items.

The accounts between the Grafflin brothers and sisters were adjusted up to April thirtieth, eighteen hundred and ninety-six, which was the close of the corporation's fiscal year. Dodd testified that he was ordered to make the entries at a meeting of the directors or of the company (he does not know which), and that he made the entries on the following day. It is sufficiently shown by the other testimony that this was the meeting of July the fifteenth already mentioned in this opinion. We think that there can be no doubt that the settlement mentioned in the proceedings of this meeting is the same as the statement of accounts by Dodd, and as the agreement contained in the paper signed and sealed by Dorsey and Frederick Grafflin and the Misses Grafflin. At the meeting of directors of July fifteenth the only persons present were Dorsey Grafflin and the Misses Grafflin. The object of the chairman's statement that a settlement had been made was to spread on the minutes, with the consent of the board of directors, an official declaration of the agreement which had been made by all the persons present, they and Frederick being the holders of all the stock of the corporation with the exception of six shares, and the whole number of shares being eighteen hundred. The language of the chairman was careless and inaccurate; but nevertheless the facts of the transaction are clearly proved in the evidence. It is also shown positively in the testimony that Frederick had never paid what he owed to the corporation; and that he could not possibly have paid it. At the time of the execution of the deed of trust he owed the corporation more than forty-five thousand dollars, and it is shown that ever since then his family have been supported by Dorsey Grafflin and Miss Edith. On the 26th day of December, eighteen hundred and ninety-four, they addressed a letter to the president of the corporation authorizing him to pay to Mrs. Frederick Graf-

flin on account of her husband a sum not exceeding fifty
dollars a week, and stating that they would be responsible
for the amount if not paid by Frederick.

The appellee's counsel vigorously assailed the validity of
Article ten of the corporation's by-law already quoted.
Section 55 of Article 23 of the Code of Public General
Laws provides that a corporation incorporated under the
general laws of this State shall have power "to make
by-laws, not inconsistent with law, for the management of
its property, the regulation of its affairs, and for the transfer
of its stock, if any stock there be, and for the forfeiture of
stock not paid for, *  *  * and to provide for all other
matters which may be regulated by by-laws." Section 56
prohibits the possession or exercise of any corporate pow-
ers, except such as are conferred by law and such as shall
be necessary to the exercise of the powers so acquired.
The interpretation of grants of power similar to that made
in section 55 has given rise to such difference of opinion in
the Courts. There are some circumstances in the present
cause which it is important to consider in determining the
operation of Article ten on the claim set up by the assignee
of Frederick Grafflin. The answer states that the by-laws
containing this Article were adopted at the time of the
organization of the corporation in September, eighteen hun-
dred and eighty-nine. This allegation, of course, is not evi-
dence of the fact stated. The testimony, however, while not
specially directed to the date of the by-laws, shows that they
were adopted about this time. On the thirtieth of September
of the same year, the certificate of incorporation was filed
for record in the office of the Clerk of the Superior Court
of the city of Baltimore. The witness Rogers testified
that he had been treasurer of the corporation ever since its
formation. The by-laws prescribe the mode in which this
officer shall be elected. It appears, then, that Rogers must
have been elected after their adoption. Testifying in May,
eighteen hundred and ninety-seven, he stated that they had
been under his charge for the last seven years, and he filed

a copy of them with his testimony.   He also testified that the certificate for three hundred and sixty-two and a-half shares of stock was delivered to Frederick Grafflin on the eighteenth day of April, eighteen hundred and ninety-one. At the time he received his certificate his title to the stock was subject to the operation of Article ten of the by-laws. He was one of the directors of the corporation, and he well knew that no stock could be issued, except under the limitations imposed by this Article.   With a full knowledge of this fact he contracted a large debt to the corporation. Upon every principle of justice and fair dealing, it must be held that he pledged his stock for this debt; and that, as between him and the corporation the pledge was as binding as if made in the most solemn form of hypothecation. When he made an assignment to Woodside for the benefit of his creditors, the assignee took the same title which he held, and not other or better.   It is perfectly well settled that he is not invested with the rights of a *bona fide* holder for value without notice.   Whatever claims, therefore, the corporation could enforce against the stock in the hands of Frederick are available against it in the hands of Woodside, his assignee.   His title must be subordinated to the prior and superior right of the corporation.

What we have said is decisive of the present controversy. But there is some public interest in the more general question whether Article ten can *proprio marte* bind the title to the stock absolutely : that is to say, whether under it the corporation could acquire a right superior to the title of a *bona fide* purchaser for value without notice.   On this point there is a difference of opinion among us.   It is not proposed to discuss the subject; inasmuch as the majority of the Court approve and adopt the statement of the law in the first volume of *Thompson on Corporations*, section 1032. It is in these words : "According to the weight of authority, a by-law creating a lien on the shares of a member, for debts due by him to the corporation, is valid and binding; though not as against innocent purchasers for value."   The

judgment of the Court is in accordance with the weight of authority as just stated.

The decree must be reversed, and the bill dismissed with costs above and below.

*Reversed and dismissed.*

(Decided January 11th, 1898).