## SHIPLEY *v.* MEADOWBROOK CLUB, INC.

(Two Appeals in One Record)

[No. 9, October Term, 1956.]

*Decided November 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*John A. Farley, Jr.,* with whom were *Coady & Farley* on the brief, for Mr. Shipley.

*Hilary W. Gans* for the Meadowbrook Club, Inc.

HENDERSON, J., delivered the opinion of the Court.

The appellant instituted an action at law on June 17, 1953, claiming the value, with interest, of four shares of the preferred stock of the appellee, which the appellee had agreed to issue and deliver to him in 1948, 1949, 1950 and 1951, as a

part of an oral contract of employment; but had wrongfully failed and refused to issue. The appellee filed a general issue plea and a plea of limitations as to the two shares alleged to have been deliverable at the end of the years 1948 and 1949. It also filed two counterclaims, alleging (1) that the appellant borrowed $3,000 upon his promissory note dated October 12, 1947, payable to the corporation without interest one year after date and secured by three shares of preferred stock issued to the appellant on August 1, 1947, and that the appellant wrongfully converted said note and said shares when his employment was terminated on January 31, 1952; and (2) that the appellant wrongfully appropriated certain materials, utilized the services of a workman employed by the appellee, and made certain charges against the corporation for personal telephone calls. The appellant filed a replication to the plea of limitations, general issue pleas to both counterclaims, and a special plea of limitations to the first, insofar as it related to the promissory note.

The case was tried by the court without a jury on June 10, 1954, but a decision was not rendered until January 19, 1956. In a memorandum filed on that date, the trial court found that the appellant was entitled to the value of the four shares, which he fixed at $4,000. The court also found that the three shares of stock were converted by the appellant, and that the appellee was entitled to set off their value, even though limitations had run upon the note. The court allowed interest for four years upon the balance of $1,000, amounting to $240, and allowed damages of $800 on the second counterclaim without interest. Accordingly, judgment was entered for the appellant in the sum of $440. Cross appeals were entered by both parties.

The appellant was employed as general manager of the Meadowbrook Swimming Pool in February, 1945, by Mr. Roberts and Mr. Stieber. Mr. Roberts and Mrs. Stieber owned all of the stock of the appellee corporation. The appellant testified that under the terms of the oral contract of employment he was to receive $4,100 a year in cash, plus one share of the preferred stock of the corporation at the end of each year. The swimming pool was only kept open from

April 1 until November 1 in each year, and it was understood that during the winter months the appellant was free to seek other employment. In the late summer of 1947 the appellant bought a house and Mr. Roberts and Mr. Stieber agreed to lend him $3,000. He gave his note and agreed that the three shares previously issued to him should be pledged as collateral. Mr. Roberts testified: "He had the stock before that." He gave the appellant his check for $3,000. The appellant testified that the stock certificate was issued to him at the time he signed the note. He placed both the note and certificate in the safe at the pool, where they remained until his employment was terminated. The certificate was not endorsed.

The appellant testified that he asked that additional shares be issued to him at the end of each succeeding year, but Mr. Stieber always put him off with the statement that it would "be taken care of". In January, 1952, he was notified that his services were terminated, and again demanded that the four shares of stock be issued to him. When this was refused, he took from the safe the note and certificate for three shares. He testified that no demand was made for the note or shares until September, 1952. At that time Mr. Roberts wrote him a letter suggesting that he return them, to which he replied that he was willing to return the note, but that Meadowbrook owed him four shares.

Mr. Roberts testified that he was not present when the appellant was employed, that any matters of that kind were "strictly up to Mr. or Mrs. Stieber". Mrs. Stieber was president of the corporation, but Mr. Stieber represented her. Mr. Roberts was treasurer of the corporation. He admitted that three shares were issued to the appellant in 1947. He did not know of any demands for stock by the appellant. Mr. Stieber admitted that the appellant was employed at a salary of $4,100 a year. As to the issuance of the three shares in 1947, "for the first few years he was there, we felt as though we were justified in giving him those shares as a bonus." He agreed that the shares should be pledged to secure the loan of $3,000. "There was never any firm agreement" to give the appellant one share of preferred stock at the end of each year. The stock was given in 1947 as "a friendly gesture. Mr. Shipley

had performed satisfactorily for the first three years". The appellant never asked for the four shares until his employment was terminated. The reason for the termination was because he thought the appellant was not spending enough time at the pool.

The testimony in support of the second counterclaim may be summarized as follows:

It is admitted that lumber costing $250 was billed to the corporation. The appellant denied using any part of this for his home, and was corroborated by the witness Townsend. The witness Smith testified that he took a truck load of lumber to the appellant's house in 1948. He told Mr. Stieber about it a week later. The appellant admitted that he had some plumbing tools belonging to the corporation, "possibly half of them, possibly 60%" which originally cost $195. He admitted using "about $5 worth of grass seed." Smith testified he used about 50 pounds, or $25 worth. He admitted that he owed the corporation an item of $189.48 for pipe. He admitted that he used Smith occasionally to help him remodel his house during the winter months in 1947 and 1948 when the pool was closed, and sometimes to cut grass in summer. Mr. Stieber knew this, but never raised any objection. The item of telephone calls totaled $9.40, and most of these he identified as business calls.

The chief contention of the appellee in his cross-appeal seems to be that the appellant is not entitled to any recovery because of his "disloyalty" to the appellee by reason of this appropriation of materials and the labor of a workman employed by the corporation, and the alleged conversion of the note and certificate of stock. We accept the general principle that an agent who is guilty of fraud upon his principal, particularly where there is a conflicting interest, concealment, or a wilful and deliberate breach of his contract, may be denied compensation for his services. *Johnson & Higgins v. Simpson,* 163 Md. 574; *Lewis v. Fisher,* 174 Md. 41; *Nagel v. Todd,* 185 Md. 512; *Hansen v. Barnard,* 270 F. 163 (C. C. A. 2d); *Lamdin v. Broadway Surface Advertising Corp.,* 5 N. E. 2d 66 (N. Y.); *Restatement, Agency,* § 469. We do not find that the appellant's conduct in the instant case calls for

the application of this rule. It is undisputed that the affairs of the corporation were loosely handled, and that, from time to time, the appellant advanced money to meet current bills, and charged items to the corporation which he later repaid. The mere fact that at the time the employment was terminated for other reasons, there was a dispute as to the balance due the corporation, does not amount to disloyalty within the rule laid down in the cases cited. Mr. Stieber and Mr. Roberts were both aware of the use of the handy man, Smith, at times when his services were not required at the pool, but they never objected. There was no concealment as to this, or as to any of the items claimed. We think the evidence shows that the irregularities were waived or condoned.

Nor does the fact that the appellant retained possession of the note and certificate of stock, under a claim that the corporation had wrongfully refused to issue additional shares to him, amount to such disloyalty as to bar a recovery of compensation, even if we assume for present purposes that it amounted to a conversion. The question of disloyalty was not mentioned in the court's opinion, although the point was raised in a memorandum submitted by counsel, but presumably it was passed on adversely to the appellee's contention. Under all the circumstances of the case we do not find that the court was clearly wrong in entering a judgment for the plaintiff.

The appellee also contends that the preponderance of the credible testimony shows that there was no binding obligation on the part of the appellee to issue one share of preferred stock at the end of each year. Here the trial court made a definite finding in support of the plaintiff's contention that the stock was promised. This finding was supported by the evidence. Not only was the testimony of Mr. Roberts and Mr. Stieber vague and indefinite, but the issuance of the certificate for three shares, dated several months prior to the date of the note, corroborates the plaintiff's version. It seems unlikely that these shares would have been issued as a mere bonus, without prior obligation. Mr. Roberts testified the corporation had an operating loss in those years. There was also evidence to support the court's finding that limitations did not apply to the shares of stock for the years 1948 and

1949. The appellant testified that, in addition to previous promises to issue the stock, Mr. Stieber told him when his contract was terminated that his claim for additional stock "would be worked out". Mr. Stieber admitted that the appellant demanded his stock at that time, although he denied any previous demands. When asked whether he ever told Mr. Shipley he was not going to give him "any bonus", during the period from 1948 to 1952, he testified: "I don't say yes or no. I may have at times." We think these admissions were enough to toll the statute, as the court found.

The appellee further contends that the evidence does not support a finding that the four shares of preferred stock were worth $1,000 each, its par value. But there was evidence that the appellee accepted three shares of the par value of $1,000 each as collateral for a $3,000 loan. There was also evidence that the property owned by the corporation had been bought for $100,000, subject to a mortgage of $80,000, later reduced to $65,000, and that it was still worth what was paid for it. Some $30,000 to $40,000 was spent on improvements. It was shown that the property was assessed for $80,200. Mr. Roberts testified there were 43 shares of preferred stock outstanding. He paid $20,000 for 20 shares and Mrs. Stieber a like amount for 20 shares. He also testified that no dividends had been declared or earned on the preferred stock. The corporation had not shown any profits because of a building depreciation charge on the books. He was "very satisfied" with his investment. We think the trial court was justified in fixing a value of $1,000 a share on the preferred stock, in the absence of any credible testimony as to market value. Cf. *Peek v. Steinberg,* 124 P. 834 (Cal.), and *Jones v. National Chautauqua County Bank,* 74 N. Y. S. 2d 498.

The appellant contends, and the trial court found, that the refusal to issue the four shares of preferred stock amounted to a conversion for which an action of trover will lie. It is well settled that a *chose in action,* including a stock certificate, may be the subject of a conversion, as well as personal property. *Poe, Pleading* (5th ed.), § 207; *Brown v. Bokee,* 53 Md. 155. In *Jones v. Ortel,* 114 Md. 205, an action of trover

for the conversion of forty shares of stock, it was held that the action would lie without nice distinctions between the stock itself and the certificate which evidences it. In the instant case, however, no certificate was ever issued for the four shares in question. It has been held, in one case at least, that trover will not lie for a failure to issue stock pursuant to agreement, the remedy being in assumpsit. *Osborn v. Chandeysson Electric Co.,* 248 S. W. 2d 657 (Mo.). Of course, damages might be recovered in equity, as an alternative to specific performance. *Real Estate Trust Co. v. Bird,* 90 Md. 229. The point is not material, however, since in *Balt. City Pass. R. R. Co. v. Sewell,* 35 Md. 238, 258, an action of assumpsit for failure to issue stock, it was held that the plaintiff could recover not only the value of the stock at the time of the demand, with interest, but also any dividends that may have accrued prior to the demand. Cf. *Saunders v. Mullinix,* 195 Md. 235, 240, and *Swartz v. G.-B.-S. Brewing Co.,* 109 Md. 393, stating the measure of damages for conversion. Nor was the point raised in the lower court, by demurrer or otherwise. Generally, any plain statement of the facts necessary to constitute a ground of action is sufficient, without reference to mere form. Code (1951), Art. 75, sec. 3. As to the damages allowed, however, we think the appellant was entitled to interest from the time of the demand for each share. Accepting the value of $1,000 for each share, we calculate the interest at $840.

The appellant also contends that his action in removing the note and certificate for the three shares from the safe did not amount to a conversion. If the taking of the note was a conversion, it was *damnum absque injuria,* since the note was concededly barred by limitations. As to the certificate, if we assume that there was a constructive or symbolic delivery by placing it in the safe, it was never indorsed, there was no reference to it in the note, nor was any other paper executed to perfect a legal pledge. Under these circumstances, we cannot find that there was such a conversion as to give rise to an action of trover. It is the general rule that although a legal pledgee has a sufficient interest and right to possession to support the action, a mere equitable interest will not suffice.

See *Deeley et al. v. Dwight et al.*, 132 N. Y. 59; *Ring v. Neale*, 114 Mass. 111; *Baker v. Seavey*, 40 N. E. 863 (Mass.); *Kean v. National City Bank*, 294 F. 214, 218 (C. C. A. 6th); 53 Am. Jur., *Trover*, §§ 73, and 158; *Fletcher, Corporations* (Perm. Ed.), § 5640.

Nor do we find that the appellee was harmed by the alleged conversion. It is true that the mere fact that an action on the note was barred by limitations would not prevent resort to the security agreed to be pledged. The statute did not extinguish the debt. *Miller v. Horowitz*, 172 Md. 419, 429. See also Notes, 103 A. L. R. 430, and 137 A. L. R. 923. We will assume, without deciding, that the appellant had no legal right to assert a lien against the certificate or the three shares represented thereby, because of his claim for additional shares. *Mattingly v. Mattingly*, 150 Md. 671, is perhaps distinguishable. But mere possession of the unindorsed certificate would have availed the appellee nothing, by way of selling or otherwise disposing of it in satisfaction of the debt. It would still have been necessary to resort to equity to enforce the agreement to pledge, if contested. Cf. *Grafflin Co. v. Woodside*, 87 Md. 146. But the appellant has never denied his promise to pledge the three shares, or unconditionally declined to do so. He testified he was always ready and willing to complete the transfer. The certificate was exhibited in the trial court, and is a part of the record here. The appellee can be made whole by a return of the certificate to it, properly endorsed for cancellation or other disposal, which will finally terminate the controversy without leaving the appellant in the position of a minority stockholder in a closely held corporation. Viewing the first counterclaim as for damages due to the failure to complete the pledge, rather than for conversion, the appellee is not entitled to anything more than the satisfaction of the debt, the delay in recovery being largely due to its own omissions.

On the question of accounting for sums owed the corporation, the appellant admits owing $214.48, to which we add $100.52 representing the value of tools. We think the evidence does not support the other items claimed, and that the value of Smith's services was not sufficiently shown, even if

this claim was not waived. Conditional upon the return of the stock certificate as above indicated, we shall open the judgment and enter a new judgment in favor of the appellant in the amount of $4,525.

*Judgment opened and entered for the plaintiff in the sum of $4,525, with costs.*